UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RACHEL WILLARD | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00233 |
| | § | |
| FRIENDSWOOD ISD | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) ("Motion to Dismiss"). *See* Dkt. 12. This motion was referred to this Court by United States District Judge George C. Hanks, Jr. *See* Dkt. 23. After careful consideration of the Motion to Dismiss, the response, the reply, and applicable law, the Court **RECOMMENDS** that the Motion to Dismiss be **GRANTED in part** and **DENIED in part**.

## FACTUAL ALLEGATIONS[1]

Plaintiff Rachel Willard ("Willard") worked for Defendant Friendswood Independent School District ("Friendswood ISD") for roughly three years as a first-grade teacher at Westwood Elementary School. During her employment in early 2016, Willard's

---

[1] This section is based on the material facts alleged in the Original Complaint ("Complaint"). For purposes of the Motion to Dismiss only, the Court construes the well-pleaded facts as true and views them in the light most favorable to the plaintiff.

14-year-old son, tragically, committed suicide.  To deal with the devastating and unexpected loss of her son, Willard subsequently took several weeks of leave from her job pursuant to the Family Medical Leave Act ("FMLA").  After returning to work, Willard did "her job well[,] . . . received no complaints from the district or any parents," and "did not require any additional classroom support."  Dkt. 1 at 3.

On May 3, 2016, the Westwood Elementary School Principal and the Friendswood ISD Superintendent requested a meeting with Willard.  At the meeting, Willard's supervisors expressed their concern that Willard "needed more time to heal" and that she had received "too much assistance from other teachers." *Id*.  Willard found her supervisors' concerns "disingenuous" because she "had not requested assistance" and "[n]o parental complaints or concerns existed." *Id.*

When Willard went to Friendswood ISD's administration building to sign her contract for the next school year, the Assistant Superintendent asked Willard if she was there for an "aide's position." *Id.*  When she replied no, the Assistant Superintendent informed Willard that Friendswood ISD recommended terminating her contract and attempted to intimidate and harass her.  Next, Willard met with Friendswood ISD Superintendent Trish Hanks ("Superintendent Hanks").  Superintendent Hanks offered Willard a special education paraprofessional position and handed her a memorandum stating: "[Friendswood ISD] is not confident that you would be able to handle all the tasks required of a classroom teacher." Dkt. 12-1 at 2.  The memorandum explained that Willard could either accept the paraprofessional position or resign from her teaching contract by the following day, May 4, 2016.  Further, the memorandum explained that "[i]f

[Friendswood ISD] do[es] not receive a resignation from you, the Board will consider taking action at the regularly scheduled meeting on Monday, May 9th, to terminate your probationary teaching contract in the best interest of the District." *Id*.  Willard refused to accept the paraprofessional position and refused to resign from her teaching position.

Superintendent Hanks recommended that the Friendswood ISD Board of Education ("Board") vote on Willard's termination at the May 9, 2016 Board meeting.  Prior to the Board meeting, the meeting agenda, which referenced Willard, was made available to the public.  "Hundreds of parents, students, families and other teachers responded with outrage in [Willard's] support and many attended the meeting in her support . . . to stop Defendant from terminating her contract and have her resign from teaching.  News crews also attended and televised the issue."  Dkt. 1 at 4.  Due to the media coverage and public outcry against Willard's termination, the Board ultimately tabled the issue.  The Board never voted to terminate Willard.

Several days later, on May 18, 2016, Friendswood ISD sent Willard a probationary contract for a special needs teaching position—although Willard was not certified to teach special needs.  The probationary contract dictated that Willard must sign within six days or she "shall be deemed to have resigned from employment at the end of [her] existing contract term."  Dkt. 15-2 at 2.

Willard filed this lawsuit, alleging that Friendswood ISD retaliated and discriminated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.  Willard also asserts a claim that Friendswood ISD created a hostile

environment.  In response, Friendswood ISD has moved to dismiss Willard's retaliation and discrimination claims under the ADA.

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a lawsuit for failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (citation omitted).

When conducting its inquiry, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff."  *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks and citation omitted).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S at 556 (internal quotation marks and citation omitted).  A motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Shaikh v. Tex.*

*A&M Univ. Coll. of Med.*, 739 F. App'x 215, 218 (5th Cir. 2018) (internal quotation marks

and citation omitted).

### DISCUSSION

A.    **ADA RETALIATION**

The ADA provides that "[n]o person shall discriminate against any individual

because such individual has opposed any act or practice made unlawful by this Act or

because such individual made a charge, testified, assisted, or participated in any manner in

an investigation, proceeding, or hearing under this Act."   42 U.S.C. § 12203(a).   "To

establish a prima facie case of retaliation under the ADA . . ., a plaintiff must show that (1)

she participated in an activity protected under the statute; (2) her employer took an adverse

employment action against her; and (3) a causal connection exists between the protected

activity and the adverse action."   *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730

F.3d 450, 454 (5th Cir. 2013).

Friendswood ISD advances two arguments for why Willard's retaliation claim

should be dismissed.   First, Friendswood ISD argues that Willard failed to exhaust her

administrative remedies because the Equal Employment Opportunity Commission

("EEOC") "charge does not set forth any factual statements describing the protected

activity that [Friendswood ISD] allegedly retaliated against her for."   Dkt. 12 at 5.   The

Court is not persuaded by this argument.   In filing a charge of discrimination with the

EEOC, plaintiffs are not required to "check a certain box or recite a specific incantation to

exhaust his or her administrative remedies."   *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th

Cir. 2006) (citation omitted).   "Instead, the plaintiff's administrative charge will be read

somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger." *Id.* (citation omitted).  In Willard's EEOC charge, she checked the retaliation box and included three pages of factual background.  At this stage, the Court will construe the EEOC charge liberally and will not dismiss Willard's retaliation claim for her alleged failure to describe her claim before the EEOC with specificity.  *See Sydnor v. Fairfax Cty.*, 681 F.3d 591, 594 (4th Cir. 2012) ("the exhaustion requirement should not become a tripwire for hapless plaintiffs"); *Tillman v. City of Boaz*, 548 F.2d 592, 594 (5th Cir. 1977) ("Charges with the EEOC must be liberally construed because they are made by persons who are unfamiliar with the technicalities of formal pleadings.").

Second, Friendswood ISD claims that Willard's retaliation claim fails because she has not sufficiently pled the first element of an ADA retaliation claim—that she engaged in a protected activity under the ADA.  In this lawsuit, "Willard alleges she engaged in protected activity by taking her Family Medical Leave just months before Defendant took its adverse actions against her." Dkt. 15 at 3.  *See also* Dkt. 1 at 3 ("[Willard] took several weeks protected leave from working.").

The Fifth Circuit has expressly held that "a request for FMLA leave is not a request for a reasonable accommodation under the ADA.  'The ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief.'" *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017) (quoting *Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir. 2001)).  Other courts have done the same.  *See Moss v. Harris Cty.*, No. CV H-14-2180, 2016 WL 9049981, at *3 (S.D. Tex. Jan. 13, 2016) ("'extended leave' of two months beyond the statutorily-protected FMLA leave is not a reasonable accommodation");

*Harville v. Tex. A&M Univ.*, 833 F. Supp. 2d 645, 661 (S.D. Tex. 2011) (FMLA leave is a

"right enforceable under a separate statutory provision").   In *Acker*, the Fifth Circuit

explained:

> Textual comparison of the FMLA with the ADA demonstrates why
> requesting FMLA leave alone is not a request for an ADA reasonable
> accommodation.  An employee who requests FMLA leave asserts he has a
> "serious health condition that makes the employee unable to perform the
> functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D)
> ("Entitlement to leave").  A request for a reasonable accommodation under
> the ADA is a claim that the employee "with or without reasonable
> accommodation, can perform the essential functions of the employment
> position that such individual holds or desires."  42 U.S.C. § 12111(8)
> ("Definitions: Qualified Individual").  *See Capps v. Mondelẽz Global LLC*,
> 147 F.Supp.3d 327, 340–41 (E.D. Penn. 2015) ("an employee who requests
> leave does not clearly communicate to her employer that she is disabled and
> desires an accommodation.") (quoting *Rutt v. City of Reading, Pa.*, No.
> CIV.A. 13–4559, 2014 WL 5390428, *4 (E.D. Pa. Oct. 22, 2014)).  Thus, an
> employee seeking FMLA leave is by nature arguing that he cannot perform
> the functions of the job, while an employee requesting a reasonable
> accommodation communicates that he can perform the essential functions of
> the job.

*Id.* at 791–92.  Here, Willard acknowledges that she took leave under the FMLA.  Nothing

in the Complaint indicates Willard asked for any additional accommodation aside from

taking FMLA leave.  Because Willard does not allege that she engaged in protected activity

under the ADA, she has failed to make a prima facie case for ADA retaliation.

**B.     ADA DISCRIMINATION**

A prima facie discrimination case under the ADA requires: "(1) that the plaintiff

has a disability; (2) that [s]he was qualified for the job; and (3) that the employer's adverse

employment decision was a result of [her] disability."  *Diggs v. Burlington N.  & Santa Fe*

*Ry. Co.*, 742 F. App'x 1, 3 (5th Cir. 2018) (citing *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)).

Friendswood ISD focuses on the third prong and argues that Willard has not adequately alleged that she sustained an adverse employment action.  "[A]n adverse employment action consists of ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (internal quotation marks and citation omitted).  In response, Willard argues that she experienced two adverse employment actions: (1) a demotion when Friendswood ISD offered her the paraprofessional position; and (2) constructive discharge when she was given six days to accept or reject the special education position.

**Demotion:**  Willard equates Friendswood ISD's offer of a paraprofessional position as a "demotion."  Dkt. 1 at 4.  However, "[a] plaintiff's subjective perception [of a demotion] is not enough [to constitute an adverse employment action]." *Hernandez v. Napolitano*, No. EP-10-CV-480-KC, 2012 WL 641033, at *6 (W.D. Tex. Feb. 27, 2012).  In this case, although Friendswood ISD offered Willard a special education paraprofessional position, her live pleading acknowledges that she never accepted the paraprofessional position.  This is critical because "[a] mere employment offer cannot be a materially adverse change in the terms and conditions of employment." *Rose v. Buckeye Telesystem, Inc.*, 181 F. Supp. 2d 772, 778 (N.D. Ohio 2001).  As such, Friendswood ISD's offer of an alternate position, without more, does not rise to the level of an adverse employment action.

**Constructive Discharge:**   Willard next argues that she suffered an adverse employment action because she was constructively discharged.   It is long-settled that constructive discharge is a form of adverse employment action. *See Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975) ("The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee."); *Smith v. Lattimore Materials Co.*, 287 F. Supp. 2d 667, 672 (E.D. Tex. 2003) ("[W]hen an employee resigns, [s]he may satisfy the adverse employment element of a discrimination claim by proving constructive discharge." (citing *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000))).

To properly allege constructive discharge, a plaintiff must plead facts suggesting that the working conditions were so intolerable that a reasonable employee would feel compelled to resign. *See Brown*, 207 F.3d at 782. "Although constructive discharge claims generally involve employees' allegations that they effectively were forced to resign because of intolerable working conditions, an employee may also demonstrate constructive discharge if she resigns after the employer communicates that the employee will be fired." *Parker v. Pulte Homes of Tex., L.P.*, No. H–09–2743, 2011 WL 767182, at *11 (S.D. Tex. Feb. 25, 2011).

In the Complaint, Willard details a series of events after her son's suicide in which Friendswood ISD allegedly pressured, intimidated, belittled, and harassed her.  In short, Willard contends that Friendswood ISD (1) refused to let her go back to teaching first

9

grade; (2) offered her a paraprofessional position that, had she accepted, would have been a demotion; (3) told her that if she did not accept the paraprofessional position, she would be fired; (4) scheduled a Board meeting to discuss her termination, with the agenda listing her termination in the best interests of the school district; (5) issued a news blast falsely stating that her contract would renew automatically; (6) offered Willard a special needs teaching position for which she was not qualified; and (7) gave her six days to decide whether to accept the new role or be deemed to have resigned from employment.  At the motion to dismiss stage, the Court must construe all factual allegations in the light most favorable to Willard, accept all well-pleaded factual allegations, and draw all reasonable inferences in Willard's favor.  *See Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  Given this standard, the Court finds that the factual allegations in the Complaint plausibly support a constructive discharge claim, *i.e.*, that Willard's working conditions were so intolerable that she was compelled to resign.  *See Coffey v. Cushman & Wakefield, Inc.*, No. 01 CV.9447JGK, 2002 WL 1610913, at *5 (S.D.N.Y. July 16, 2002) ("[H]er allegation of constructive termination is itself sufficient to place the defendant on notice of the nature and basis of her claim." (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002))).  Because Willard has sufficiently alleged a constructive discrimination claim, she has pled a prima facie ADA discrimination case that survives a Rule 12(b)(6) motion to dismiss.

## CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Motion to Dismiss be **GRANTED in part** and **DENIED in part**.   More specifically, the Court recommends that (1) Willard's retaliation claim against Friendswood ISD be dismissed; and (2) Willard's discrimination claim against Friendswood ISD remain.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.   Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 11th day of June, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE